# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| TIMOTHY LONGJAW, | CV 22-107-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER |
| BRIAN GOOTEN, ET AL., | |
| Defendants. | |

Plaintiff Timothy Longjaw filed a 42 U.S.C. § 1983 complaint alleging violations of his constitutional rights at Montana State Prison ("MSP"). (Doc. 2.) The Complaint fails to state a claim for relief in its current form. The Court will allow Longjaw to amend his Complaint to conform to the following analysis.

## I. STATEMENT OF THE CASE

### A. Parties

Longjaw is currently incarcerated at Crossroads Correctional Center, Shelby, Montana, but the events he complains of occurred at MSP. He proceeds in forma pauperis and without counsel. He names as Defendants Brian Gooten, Director of the Montana Department of Corrections, Jim Salmonsen, Warden of Montana State Prison, and Billie Reich, Joseph Callahan, Daniel Layne, Mr. Highly, Jane Doe, and John Doe, all MSP employees. (Doc. 2 at 2.)

### B. Allegations

1

Longjaw alleges four violations. He asserts that Defendants Layne and Highly targeted him for searches and negative treatment for racial reasons. Longjaw alleges this conduct occurred on or about December 27, 2020, until on or about January 4, 2021. (*Id.*) He claims that during these searches, these defendants made lewd comments about his body. (*Id.*) He next alleges that Layne told other incarcerated individuals that Longjaw was a "snitch." (*Id.* at 3.) He also claims Defendants Callahan and Reich failed to process his emergency grievances related to Layne's conduct. (*Id.*) He finally claims that Layne and Highly lost certain property of his during a transfer. (*Id.* at 3-4.)

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Longjaw, as an incarcerated person, proceeds in forma pauperis in this matter. The Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by an incarcerated person against a governmental defendant if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The Court, having screened Longjaw's claims, concludes that his Complaint fails to state a claim. The Court will give Longjaw an opportunity to amend his Complaint based on the analysis in this Order.

### A. Supervisory Liability

Longjaw first fails to state claims against Defendants Gooten and Salmonsen. A plaintiff must present factual allegations against each individual defendant sufficient to state a plausible claim for relief and place each individual defendant on notice of the claim against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The allegations must link the actions or omissions of each named defendant to a violation of the plaintiff's rights. *Iqbal*, 556 U.S. at 676-77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). Longjaw's Complaint contains no specific allegations regarding these two named defendants that suggest they had any personal involvement with any of the conduct that Longjaw complains of, other than a conclusory allegation that Longjaw "wrote the Warden about these issues and received no reply or assistance from his office." (Doc. 2 at 4.)

An alternate theory of liability, under § 1983 against supervisors such as Gooten or Salmonsen, requires a plaintiff to establish that the supervisor's prior knowledge of unconstitutional conduct, committed by subordinates, would give the supervisor notice of the need for changes. *Howell v. Earl*, 2014 WL 2594235 (D. Mont. 2014 May 30, 2014) (citing *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011)); *see also Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). A court will dismiss allegations against supervisors that resemble "bald" and "conclusory" allegations. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Longjaw

includes no allegations in his Complaint regarding Gooten and asserts only that Warden Salmonsen's office did not respond to his letters. Longjaw must allege "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates" should he choose to amend these claims. *Id.* at 942 (citing *Starr*, 652 F.3d at 1206-07).

### B. Grievance Responses

Longjaw's Complaint also fails to state a claim under 42 U.S.C. § 1983 because Longjaw possesses no constitutional right to any particular grievance response. Longjaw's specific allegations regarding grievances include that he filed an emergency grievance after he learned that Defendant Layne had told other incarcerated individuals that Longjaw was a snitch. (Doc. 2 at 3.) Longjaw asserts that, due to Layne's actions, Longjaw "received retaliation by other inmates due to word of mouth." (*Id.*) Longjaw does not explain what constituted the retaliation, however, and he does not allege he was assaulted or threatened. (*Id.*) Callahan responded to Longjaw's emergency grievance, explaining that he would "follow up [with] Unit Staff." (*Id.*) Longjaw filed another grievance approximately five weeks later to an officer not named as a defendant here, complaining that Layne still worked on his unit. (*Id.*) These grievances do not reference Reich by name. (*Id.*)

Reich and Callahan did not violate Longjaw's constitutional rights by failing to respond in the manner he preferred to his grievances. The Court acknowledges

that "prisoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The constitutionally required response to such grievances involves a more nuanced analysis.

The staff processing grievances do not cause or contribute to past constitutional violations when any actions they could take would not remedy the violation. *See Williams v. McKay*, 2020 WL 1105087, at *2 (D. Idaho Mar. 6, 2020). "A guard who stands and watches while another guard beats a prisoner violates the Constitution," for example, but "a guard who rejects an administrative complaint about a completed act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007). The relevant staff may be liable under § 1983 only if they knew of an ongoing constitutional violation, possessed the authority and opportunity to prevent the ongoing violation, yet failed to act to remedy it. *Williams*, 2020 WL 1105087, at *2.

Longjaw's Complaint focuses on his concerns regarding the snitch label and the effect of that comment on his interactions with other prisoners. (Doc. 2 at 3.) His January 14, 2020 grievance, appended to his Complaint, only complained about Layne's informing other prisoners that Longjaw had snitched. (Doc. 2-2 at 2.) Longjaw did not request any specific action in his grievance to address Layne's conduct. (*Id.*) The response to this grievance constitutes the Complaint's only mention of Callahan and Reich. Layne already had committed any alleged

5

constitutional violation by the time Callahan processed Longjaw's grievance. Neither Callahan nor Reich had any additional obligations in light of the law previously explained. Longjaw does not state a claim against Callahan based on this individual grievance response.

Longjaw's subsequent grievances do not impose further obligation on any MSP staff. He grieves of events that occurred in the past and the absence of any grievance responses. (Doc. 2-2 at 3-6.) These grievances fail to request any particular action, however, nor do they make clear that an ongoing violation required a staff response. (*Id.*) Longjaw fails to state a claim for relief regarding these remaining grievance responses.

**C. Lost Property**

Longjaw contends that Layne and Highly lost his property in violation of his rights. (Doc. 2 at 3-4); (Doc. 2-4 at 3); (Doc. 2-5 at 2.) Incarcerated individuals have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property, one carried out pursuant to established state procedures, may violate the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process

6

Clause of the Fourteenth Amendment," however, if a meaningful post-deprivation remedy for the loss remains available. *Hudson*, 468 U.S. at 533. The Montana Tort Claims Act provides an adequate post-deprivation remedy for the loss of property a governmental entity causes. *See* Mont. Code Ann. § 2-9-101(1) (2019). Additionally, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to . . . property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original).

Longjaw does not allege that he lost his property because of a deliberate act taken pursuant to policy; he instead asserts that the loss resulted from a negligent act contrary to policy. (Doc. 2 at 3-4.) The Montana Tort Claims Act, rather than 42 U.S.C. § 1983, offers the proper remedy. Longjaw fails to state a claim for relief related to his lost property for these reasons.

### D. Defendants Highly and Layne

Longjaw's Complaint includes one potentially viable claim. Longjaw alleges that Layne and Highley mistreated him with the use of racial slurs, lewd comments, and near-daily strip searches. (Doc. 2 at 2-3.) The remainder of his Complaint, however, focuses on other matters. The limited facts provided regarding this conduct make it unclear whether Longjaw includes these allegations merely as background for his other claims or whether he has stated an independent claim. Longjaw filed two grievances that reference Highly's discrimination and harassment, for example,

but both grievances appear to concern primarily the loss of property. (*Id.* at 2, 3.)

Longjaw may intend to state an equal protection claim by mentioning the racial insults Highly and Layne used. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted). A plaintiff relatedly must show that defendants treated him differently from other members in the relevant class, in this case incarcerated individuals. *Id.*

Longjaw must allege facts that provide notice to Defendants about what, and whose, conduct meets this standard. Racial comments, without more, do not suffice. Longjaw must explain how Defendants' treatment of him differed from their treatment of others. He must present factual allegations against each individual defendant sufficient to place them on notice of the claims against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) Longjaw's Complaint mentions Layne in the context of this discrimination, for example, but the evidence revealed in his grievances only relate Highly to this conduct. Longjaw must explain exactly what

happened, including how specific MSP staff treated him in comparison to how they treated other individuals, in order to state an Equal Protection claim.

Longjaw has not alleged a viable 42 U.S.C. § 1983 Eighth Amendment sexual harassment or abuse claim regarding the lewd comments alleged in his Complaint. The Ninth Circuit has held that an incarcerated person presents a viable Eighth Amendment claim where he "proves that [] prison staff [], acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Longjaw does not state facts sufficient to allege an Eighth Amendment sexual abuse claim.

### III. CONCLUSION

The Court has screened Longjaw's Complaint and determined that it fails to state a claim upon which relief may be granted. The Court will provide Longjaw the opportunity to amend his Complaint in compliance with this order. Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Any amended complaint must consist of **short, plain statements** telling the Court: (1) the rights Longjaw believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what **each** defendant did or failed to do; (4) how the

action or inaction of that defendant is connected to the violation of Longjaw's rights; (5) when the alleged actions took place; and (6) what injury Longjaw suffered because of that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Within thirty days of the making of this Order, Longjaw shall file an amended complaint, if he is able to do so.

2. The Clerk of Court is directed to provide Longjaw with an Amended Complaint form. The Amended Complaint must contain all of Longjaw's claims in one document and not refer to or incorporate other documents.

3. If Longjaw fails to file a timely Amended Complaint, the Clerk of Court is directed to enter judgment in this matter according to Fed. R. Civ. P. 58. The dismissal will count as a strike within the meaning of 28 U.S.C. § 1915(g).

4. At all times during the pendency of this action, Longjaw must immediately advise the Court and opposing counsel of any change of address and its effective date. Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

DATED this 14th day of December, 2022.

_____

Brian Morris, Chief District Judge
United States District Court